IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KARIM BURKE,** | : | CIVIL ACTION NO. 14- |
| Plaintiff | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA GAS WORKS,** | : | |
| **RAYMOND SNYDER,** | : | |
| In his official capacity as the Vice | : | |
| President of Philadelphia Gas Works, | : | |
| **JOHN DOE(S),** | : | |
| In their official capacities as supervisors | : | |
| at Philadelphia Gas Works, | : | |
| Defendants | : | |

## COMPLAINT
### Introduction

1. Plaintiff Karim Burke is a devout Muslim who has, for many years, refrained from shaving his beard as mandated by his deeply held religious beliefs. In 2011, Mr. Burke was hired by the Philadelphia Gas Works ("PGW"). Mr. Burke was wearing a full beard when he was interviewed for employment, and has continued to wear his beard for the last three years with the knowledge of his PGW supervisors. During this time, he was recognized as a model employee. Several months ago, Mr. Burke was advised that to continue his current status at PGW he would have to shave off his beard so that he could be fitted with a Self-Contained Breathing Apparatus (SCBA). Mr. Burke advised PGW that his religious convictions bar him from doing so. Despite the fact that there was no need for Mr. Burke to use a SCBA in the course of his current employment, PGW refused to waive the requirement that he shave is beard as it had in the past. Despite the fact that other devices which can accommodate beards afforded an adequate level of

1

protection, PGW refused to provide a SCBA that could be used without shaving. Despite the fact that other jobs of comparable status and pay for which he is qualified are available at PGW, PGW refused to transfer him to one of those positions. Instead, PGW demoted Mr. Burke and assigned him to a different position at a substantial cut in salary. This governmental action violates the plaintiff's rights under the Free Exercise Clause of the First Amendment and the Pennsylvania Religious Freedom Protection Act. It also violates his rights under Title VII, the Pennsylvania Human Relations Act, and the Philadelphia Human Relations Ordinance.

2. Plaintiff brings this action for injunctive and declaratory relief to end the interference with his constitutional and statutory rights by PGW, and he seeks damages for the violation of those rights.

**Jurisdiction**

3. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(1), (3), (4) and the aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

**Parties**

4. Plaintiff Karim Burke is a resident of the Eastern District of Pennsylvania and at all times relevant to this action resided in Philadelphia, Pennsylvania.

5. Defendant Philadelphia Gas Works ("PGW") is and was a governmental entity and/or political subdivision under the laws of the Commonwealth of Pennsylvania and the County of Philadelphia and is and was the public natural gas utility for the County of Philadelphia with headquarters at 800 West Montgomery Avenue, Philadelphia, Pennsylvania 19122. Defendant

PGW acts as an agent of the Commonwealth of Pennsylvania and the County of Philadelphia for the sole purpose of providing natural gas in the City of Philadelphia and at all times relevant to this Complaint operated, supervised, managed and ran PGW and was the public employer of defendants Snyder and Doe(s).

6. Defendant Raymond Snyder is and was the Vice President of PGW and manages the operation of the PGW facility where the plaintiff worked at all times relevant to this Complaint before his transfer. In that capacity, defendant Snyder was the administrator responsible for implementing and/or carrying out the rules, policies and procedures as established by PGW, and supervised all employees at the PGW facility where the plaintiff worked. Defendant Snyder is being sued in his individual capacity and in his supervisory capacity as Vice President of PGW.

7. Defendant John Doe(s) are and were supervisors of the PGW facility where the plaintiff worked at all times relevant to this Complaint. In that capacity, defendant Doe(s) were responsible for implementing and/or carrying out the rules, policies and procedures as established by PGW and/or defendant Snyder, and supervised employees at the PGW facility where the plaintiff worked. Defendants Doe(s) are being sued in their individual and supervisory capacities.

8. At all times relevant to the instant Complaint, Defendants Snyder and Doe(s) were acting under color of state law and were engaged in the course and scope of their employment as an employees, agents and officials of defendant PGW.

9. At all relevant times, all defendants were acting in concert, and the actions taken by all defendants deprived the plaintiff of his constitutional and statutory rights.

**Factual Allegations**

10. On or about September 2011, Karim Burke was hired as a Process Operator at PGW.

11. Mr. Burke had quit his job at the Philadelphia School District to take the position at PGW, principally because the PGW position carried a higher salary, greater responsibilities and opportunities for professional advancement.

12. Mr. Burke was assigned to the PGW facility at 3100 East Venango Street in Philadelphia.

13. At the time he was hired, Mr. Burke had a full beard. As a devout Muslim, he is prohibited as a central part of his religious observance from shaving off his beard. Mr. Burke was never advised that he would be required to shave off his beard as a condition of employment. In fact, he would not have quit his job at the School District and accepted the position at PGW had he been told that he would have to shave in violation of his deeply held religious beliefs.

14. The PGW facility on Venango Street ("the Richmond complex") is comprised of more than 25 separate buildings, plants, holding tanks, offices and pumping stations in an area covering more than 12 acres. Some of the buildings are connected; others are free-standing. There are numerous means of egress from those parts of the property that are fenced in.

15. As a Process Operator, Mr. Burke's job assignment requires him to walk from one part of the Richmond complex to another, taking and recording gauge readings, adjusting pumps and heaters, and recording computer data.

16. In the event of an emergency (i.e. explosion, noxious fumes or fire), Mr. Burke has been told to evacuate the premises immediately and congregate with other employees at a building outside and across from the Richmond complex.

17.  Mr. Burke has no responsibilities in the event of an emergency that would require him to remain inside the Richmond complex. Neither he nor many other PGW employees at the Richmond complex receive any special training or instruction on their duties and responsibilities in the event of an emergency other than to evacuate immediately.

18.  Mr. Burke believes that a supply of Self-Contained Breathing Apparatuses (SCBA) are stored in a secured and locked facility inside the Machine Shop, a small building located in the Northwest section of the Richmond complex.  The purpose of the SCBA is to provide protection from toxic fumes or other gases in the event of an emergency.  PGW uses a type of SCBA that is also fire-retardant.

19.  PGW schedules "fit tests" for some of the employees who work at the Richmond complex on an annual basis.  The purpose of the "fit tests" is to measure employees for the SCBA.  Employees are supposed to be clean shaven at the time of their "fit tests."

20.  Upon information and belief, some employees at the Richmond Complex are not required to be fitted with any type of SCBA .  Some employees who work in other PGW facilities are required to be fitted for SCBAs; many other employees are not subject to this requirement.

21.  It may take under five (5) minutes to complete the "fit test" of an employee.

22.  The SCBAs that have been fitted to particular PGW employees are stored somewhere in the Richmond complex.

23.  Pursuant to PGW policy and procedure, employees  are required to be clean shaven at the time of their annual "fit test."  After the test, employees are free to grow back their facial hair if they wish to do so.  In fact, numerous employees at the Richmond complex grow facial hair

after their annual fit tests and, with knowledge and consent of their supervisors wear facial hair during their employment.

24. In the event particular PGW employees were required to remain in the Richmond complex during an emergency, those employees who have beards or other facial hair would be required to shave before seeking out their SCBAs.

25. Many PGW employees who have been "fit tested" for a SCBA have not received training or instruction as to the location of shaving razors or other cutting implements so they can shave in the event of an emergency before obtaining their fitted SCBAs, where and how to obtain the SCBAs, and what to do after they receive their SCBAs.

26. To obtain a custom-fitted SCBA, an employee find the proper SCBA storage area, complete a requisition form and submit the form to a supervisor, who in turn locates and retrieves that employee's SCBA.

27. In October 2011, shortly after Mr. Burke was hired by PGW, he was told to go for a "fit test." Mr. Burke advised PGW management that he was barred from shaving off his beard on religious grounds. Mr. Burke was told by a PGW supervisor that he did not have to take a "fit test" because his facial hair would make it impossible to complete the test. On information and belief, this advice was tendered with the knowledge and pursuant to the policy of PGW administration.

28. On or about October 2012, Mr. Burke appeared for another annual "fit test," and was again told by a PGW supervisor that it was not necessary for him to be fitted with a SCBA  On information and belief, this advice was tendered with the knowledge and pursuant to the policy of PGW administration.

29. In October 2013, Mr. Burke appeared for a third "fit test."  On this occasion, he was told by a PGW supervisor that he needed to shave off his beard so that a "fit test" could be conducted.

30. PGW considered Mr. Burke a valued employee and Process Operator who performed his job well and was hard-working, diligent, reliable and responsible.

31. In October 2013, Mr. Burke was told that his failure to do shave off his beard would result in his termination of employment at PGW or his transfer to a new position at a lower wage.

32. Mr. Burke refused to shave off his beard for a "fit test" as doing so would violate his core religious beliefs.  PGW supervisors refused to waive the fit test as they had done in the past.

33. There was no compelling or even rational interest that would require Mr. Burke to be fitted for a SCBA as his job duties require him to leave the Richmond complex in the event of an emergency and he was given no emergency training or responsibilities.

34. As an alternative, Mr. Burke asked that he be provided with a SCBA that does not require the user to be clean shaven.  There are SCBA devices that can be used by men, such as Mr. Burke, who have a beard.  Those devices provide the same level of protection from toxic fumes, but are not fire retardant.  PGW rejected that request despite the absence of the need for Mr. Burke to be fitted with a fire retardant SCBA.

35. As another alternative, Mr. Burke asked that he be assigned to a position at PGW that does not require the use of a SCBA and would match his current salary and benefits level.  PGW rejected that request.

36. On January 29, 2014, Mr. Burke was removed from his position as Process Operator by defendants Snyder and/or Doe(s), and assigned to a new position as Mechanic's Helper at 800

West Montgomery Avenue in Philadelphia at a substantial reduction in salary.  Mr. Burke assumed his new position under protest.

37.  The requirement that employees like Mr. Burke shave off their beards imposes a substantial burden on the free exercise of religious beliefs by members of particular religious groups, including Muslims like Mr. Burke as well as some Jews, Sihks and Amish, whose sincere and deeply felt religious beliefs bar shaving.

### Count I:  Federal Cause of Action Under First Amendment

38.  Plaintiff incorporates by reference paragraphs 1- 37 of the Complaint

39.  The First Amendment of the United States Constitution, which applies to PGW by virtue of the Fourteenth Amendment, prohibits PGW from abridging the free exercise of religion.

40.  The requirement that employees like Mr. Burke shave all facial hair as a condition of retaining their positions imposes a substantial burden on the religious exercise of members of particular religious groups, including Muslims like Mr. Burke, some Jews, Sihks and Amish, whose sincere and deeply felt religious beliefs require them to wear beards.  In this case,  PGW requires Mr. Burke to suffer demotion because of his religious practice as a Muslim. PGW's demotion of Mr. Burke because of his refusal to shave his beard burdens his free exercise of religion.

41.  An official action which burdens an individual's central religious practice  may be sustained on the basis of a showing of rationality if it is uniform, "neutral," and "generally applicable."  However, "a law must satisfy strict scrutiny if it permits individualized, discretionary exemptions " *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. Pa. 2004) (citations omitted)  See *FOP Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 364 (3d Cir.

N.J. 1999) quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 537 ( 1993) ("In circumstances in which individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of 'religious hardship' without compelling reason").

42. PGW makes individualized decisions regarding which employees are required to shave their beards as a condition of employment. Not all PGW employees are required to shave their beards; not all employees at the Richmond complex are required to shave their beards. PGW allows employees in Mr. Burke's former position to grow beards for secular reasons such as style, fashion or taste; they are only required to shave their beards once each year for a "fit test," and may have facial hair every other day of the year. Until 2013, PGW officials provided an individualized exemption to Mr. Burke from the requirement that he shave his beard to obtain a fit test. To be constitutional, the decision to remove this individualized exemption must be narrowly tailored and necessary to further a compelling interest.

43. PGW makes individualized decisions regarding the circumstances in which employees are permitted to transfer laterally to jobs with equivalent salary, responsibilities and benefits. To be constitutional, the individualized decision to deny Mr. Burke the lateral transfer and demote him because of his exercise of religion must be shown to be narrowly tailored and necessary to further a compelling interest.

44. Further, "a law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated..... If a law burdening religiously

motivated conduct is not neutral and generally applicable.... it must serve a compelling government interest and must be narrowly tailored to serve that interest" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. Pa. 2004) (citations omitted).

    45.  PGW's "fit test" requirement does not reach large categories of employees, including many office workers, facilities employees and/or security staff at the Richmond complex and at other PGW facilities.  PGW's requirement does not reach these job categories because availability of custom fitted SCBAs would not discernibly increase the safety or job capacities of such individuals, and therefore would undermine PGW's legitimate goals only marginally.

    46.  Permitting an exemption for Mr. Burke would have a similarly *de minimus* impact on safety goals and job capacities.  Mr. Burke's job responsibilities in his former position did not involve any contact with fires, explosions or safety emergencies. He was instructed that in an emergency he was to evacuate the complex immediately. The availability of an SCBA at a secure location somewhere in the Richmond complex that can be worn without facial hair would be of absolutely no assistance in his emergency evacuation.  PGW recognizes as much, since it permits all employees in Mr. Burke's former position to wear facial hair during all but one day of the year.

    47.  Because the SCBA fit test requirement does not reach  substantial categories of employees, and this coverage undermines the interests served by the fit test requirement to at least the same degree as would an exemption for Mr. Burke, the refusal to exempt Mr. Burke from the requirement can be constitutional only if it is narrowly tailored and necessary to serve a compelling interest. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 211 (3d Cir. Pa. 2004).

    48.  Demoting Mr. Burke because of his exercise of religion is not necessary to serve a

compelling, or even rational interest of PGW.   The availability of a fire retardant SCBA would not  discernibly increase the safety or job capacities of Mr. Burke in his former position.

49.  The provision of a SCBA that could be worn over a beard would provide as much safety from noxious fumes as a fit tested SCBA. Allowing Mr. Burke to transfer laterally to a SCBA-exempt position would impose no burden on PGW.

50.  PGW's decision to demote Mr. Burke violates the Free Exercise Clause of the First Amendment.

51.  Plaintiff will suffer irreparable harm in violation of his constitutional  rights if PGW is not enjoined from the effort to force the plaintiff to shave off his beard.

52.  The harm to the plaintiff by denying injunctive relief outweighs the harm to the defendants by granting such relief, and injunctive relief would serve the public interest.

### Count II-State Law Claims

53.  Plaintiff incorporates by reference paragraphs 1-52  of the Complaint.

54.  The policies and practices alleged in this Complaint deprive the plaintiff of his rights under the Pennsylvania Religious Freedom Protection Act ("PRFPA"), 71 Pa.C.S. §2401, et seq. Plaintiff, through his counsel, pursuant to 71 Pa.C.S. §2401, et seq., provided notice to PGW of the intent to file the instant legal action.  If appropriate declaratory and injunctive relief that is necessary to enjoin PGW is not granted, the harms suffered will be irreparable, as the unconstitutional policies and practices will continue to exist for the foreseeable future.

**Relief**

Wherefore, the plaintiff requests the following relief:

1. A declaratory judgment that the PGW practices and policies alleged in this Complaint are unconstitutional and in violation of federal and/or Pennsylvania law;

2. A permanent injunction prohibiting the defendants from the implementation or application of the policies and practices alleged in this Complaint, and an Order requiring the defendants to restore the plaintiff to his Process Operator II position at PGW under the same terms as existed in December 2013;

3. Compensatory damages as to all defendants;

4. Punitive damages as to the individual defendants;

5. Reasonable attorney's fees and costs; and

6. All other appropriate relief.


S/ Paul Messing
Paul Messing
No. 17749
KAIRYS, RUDOVSKY,
MESSING & FEINBERG, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
Counsel for Plaintiff

S/ Seth Kreimer
Seth Kreimer
No. 26102
3400 Chestnut Street
Philadelphia, PA 19104
Counsel for Plaintiff